IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 15, 2015

## JERRY KIRKPATRICK v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 102602     Steven W. Sword, Judge**

**No. E2015-00036-CCA-R3-PC – Filed December 3, 2015**

The petitioner, Jerry Kirkpatrick, appeals the denial of his petition for post-conviction from his convictions for burglary and theft of property over $1,000, arguing that he received ineffective assistance of counsel at trial. After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Jerry Kirkpatrick.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Charme P. Knight, District Attorney General; and Kenneth F. Irvine, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

A Knox County Criminal Court jury convicted the petitioner of burglary and theft of property over $1,000 stemming from the burglary of a Dollar General store, and he was sentenced to an effective term of seven years in the Tennessee Department of Correction. The petitioner appealed, and this court affirmed. The Tennessee Supreme Court denied his application for permission to appeal.

The underlying facts of the case were recited by this court on direct appeal as follows:

At the [petitioner]'s trial, Mr. Benjamin Kramer testified that in January of 2009 he was employed as the manager of the Dollar General store on Middlebrook Pike in Knoxville, Tennessee. He testified that on January 19, 2012, he went to open the store around 6:00 a.m. and noticed that the store's alarm light had been knocked out of the ceiling. He testified that he called the police and carefully entered the store, where he discovered the office door was open and the store's safe was missing.

While on the stand at trial, Mr. Kramer was shown several pictures of the crime scene, which he identified and which were entered into evidence. He was also shown a video. Mr. Kramer identified this video as footage of his office that was taken by one of his store's video surveillance cameras. Mr. Kramer testified that the video depicted two men with a bag of tools entering the store's office, lifting the store's safe onto a dolly, and wheeling it out.

Mr. Kramer testified that the store's safe contained deposits from the previous day, including cash, checks, and loose change. He estimated that the total amount contained in the safe was between $5,000 and $7,000. The witness testified that the safe itself was worth approximately $2,000 and that it was no longer serviceable after it was recovered. Before concluding, Mr. Kramer testified that his store was located in Knox County and that no one had permission to remove the safe and its contents from the store.

Mr. Daniel Phelps testified that he was presently incarcerated on burglary charges and that he had been charged with stealing on numerous occasions. He testified that in return for his testimony, the State had agreed to write a letter to the parole board recommending that he receive parole. He testified that the State's agreement to provide this letter was conditioned upon his testifying truthfully.

Mr. Phelps testified that on January 19, 2009, he was involved in the burglary of a Dollar General store on Middlebrook Pike in Knox County, Tennessee. He testified that this burglary was planned by the [petitioner] and Chris Kirkpatrick, and both of the Kirkpatrick brothers participated in it. He testified that on the date in question the three of them traveled to the store in question around midnight. He testified that he dropped the brothers off and then drove a quarter mile up the road to watch for the police. He testified that both the brothers were wearing masks, and they carried a purple burglary bag with them containing sledgehammers, crowbars,

screwdrivers, and the like. Mr. Phelps testified that he acted as a lookout for the crew for three or four hours and that he made several cell phone calls to Chris Kirkpatrick during this time period. Eventually, the brothers called him and informed him that they had the store's safe in their possession. He pulled up in the car and the brothers loaded it into the trunk.

Mr. Phelps testified that afterward they all drove to the [petitioner]'s house, where they broke open the safe. He testified that they found $5000 inside. He testified that they split this money three ways and each took approximately $1700. He testified his girlfriend was also present at the house when this occurred. He testified that afterward, he and the brothers loaded the empty safe back into his car and threw it in a creek behind the Kmart on Broadway Street.

Mr. Phelps testified that ten days later, he and the Kirkpatrick brothers were involved in an attempted burglary of a Dollar General store in Grainger County. He testified that all three men met at the [petitioner]'s house and then drove to the store in question. He testified that he and Chris Kirkpatrick got out and "scoped" out the store while the [petitioner] drove around and generally acted as a lookout. He testified that while he acted as a lookout from approximately an eighth of a mile away, Chris Kirkpatrick went around the building, cut the alarm system, and knocked off the alarm's siren. He testified that the burglary was interrupted when five or six police units pulled into the parking lot. He testified that he and Chris Kirkpatrick ran away (separately), and he made it about a half mile away before calling one of his friends to come pick him up.

After his friend picked him up, Mr. Phelps received a call from Chris Kirkpatrick asking him to come pick him up as well, and Mr. Phelps and his friend did so. He testified that as they were driving away, he saw his own car – an Oldsmobile Bravada – pulled over on the side of the road. They pulled over to see if the [petitioner] was still inside. At that point, they were "swarmed" by the police and taken into custody. While he was in custody, Mr. Phelps told the police about his own and the Kirkpatrick brothers' involvement in the Middlebrook Pike and Grainger County burglaries. He also told the police about the tool bag and showed them where it was located.

At this point during Mr. Phelps' testimony, the store security footage from the burglary of the Dollar General store on Middlebrook Pike was

played again for the jury. Mr. Phelps identified the [petitioner] as one of the two individuals appearing in that video footage. On cross-examination, Mr. Phelps was questioned concerning numerous inconsistencies between his recent testimony and his earlier statements to police.

Ms. Heather Moore, Mr. Phelps' former girlfriend, testified that on January 18, 2009, she had just finished spending a normal day with Mr. Phelps when he left with Chris Kirkpatrick. She testified that she drove over to the [petitioner]'s house and found all three men there. She testified that she stayed there through the morning hours. At some point, all three men left without telling her where they were going. She fell asleep on the couch, but she eventually awoke when the men came through the back door making "a lot of loud noises." She saw them carrying a safe with a blanket draped over the top of it. She testified that they carried the safe into a bedroom and closed the door, and afterward she heard a "lot of loud beating noises, clanging metal." After about an hour, they opened the door and she saw the safe lying on the ground with the door open. The men were putting various tools – including an axe head, a sledgehammer, a crow bar, and some screwdrivers – into a bag. She saw Mr. Phelps receive some money, which he shared with her. She heard the [petitioner] and his brother discuss throwing the safe into the creek behind a Kmart. Then all three men left, and she never saw the safe again. During cross-examination, Ms. Moore was also questioned extensively concerning discrepancies in her recent testimony and her prior statements to police.

Detective Scott Webb of the Knox County Sheriff's Office testified that he investigated a burglary of the Dollar General store on Middlebrook Pike on January 19, 2009. He testified that he initially made contact with the store's manager by cell phone because the store's phone lines were out. He testified that he found this fact to be significant because a similar method of operation had been used in numerous other Dollar General store burglaries. He testified that during his investigation he learned that the alarm horn outside of the business had been knocked down and that the burglars had entered from the rear of the building, which was also similar to the other burglaries. Detective Webb testified that he collected the store's surveillance camera video footage, which the jury had recently watched. Detective Webb testified that he learned during his investigation that approximately $5,000 had been stolen from the store's safe and about $500 worth of damage had been done to the store's alarm system.

4

Detective Webb testified that on January 29, 2009, he was conducting surveillance of Mr. Phelps' house as part of a joint task force investigation. He observed two vehicles, one of which was an Oldsmobile Bravada, leave that house and travel to the [petitioner]'s house. Around 2:00 a.m., he saw a vehicle leave the [petitioner]'s house. He and other officers followed the vehicle, and they identified the [petitioner], Chris Kirkpatrick, and Mr. Phelps as its occupants when the three exited their vehicle while stopping for gas. They followed the vehicle to the vicinity of a Dollar General store located in the town of Blaine in Grainger County, Tennessee.

Detective Webb testified that he and the other officers concealed their vehicles around a nearby repair shop that "kind of looked like a junkyard." From there, they witnessed the Oldsmobile Bravada, now containing only a single occupant, driving up and down the street. Detective Webb testified that the car went up and down the street at least six or seven times during a ten or fifteen minute period. Detective Webb testified that he called Grainger County sheriff's deputies to notify them concerning a possible burglary in progress.

Detective Webb testified that he saw Chris Kirkpatrick in front of the store swinging a long, dark object at the ceiling. He testified that he gave his officers the order to "come in and take them down," and they attempted to do so. Afterward, he determined that the alarm siren box had been torn from the store's ceiling and was lying on the sidewalk, and the store's phone lines had been cut at the utility pole. He testified that these two facts were similar to the burglary at the Dollar General store on Middlebrook Pike.

Detective Webb testified that they did not apprehend anyone at the store. However, they sent a unit to intercept the Oldsmobile Bravada as it drove back by. They arrested the [petitioner] after finding him inside, secured the car, and transported him back to the police station. Detective Webb testified that they intended to move the vehicle to another location to see if anyone would approach it, but they never had the chance to do so because another vehicle drove by honking its horn and flashing its lights before pulling into the driveway right in front of him. He and the other officers immediately took its occupants, including Chris Kirkpatrick and Mr. Phelps, into custody.

5

Detective Webb testified that Mr. Phelps answered all of his questions during the ensuing interrogation. He testified that Mr. Phelps confessed to his involvement in both burglaries and identified the [petitioner] and Chris Kirkpatrick as his partners. Afterward, Mr. Phelps led him to a purple tool bag (which they had captured on video at various locations that had been burglarized), as well to some radios and some masks – all of which were located in a field near a tree line. Detective Webb testified that when Chris Kirkpatrick was arrested, he was wearing the same brown sweatshirt with an orange insignia that police had seen in the video footage from the burglary of the Dollar General store on Middlebrook Pike. Detective Webb testified that a safe linked to the burglary of the Dollar General store on Middlebrook Pike was recovered on January 20, 2009, in a creek behind the Kmart on Broadway Street. Finally, Detective Webb testified that the charges against the [petitioner] concerning the attempted burglary of the Dollar Store in Grainger County had been dropped.

On cross-examination, Detective Webb testified that the [petitioner] did not resist or attempt to evade arrest on the night of the attempted burglary of the Dollar General Store in Grainger County. He testified that the [petitioner] had a cell phone on him when he was arrested but that he did not check the [petitioner]'s cell phone to determine which numbers had been recently called. Detective Webb testified that no fingerprints were discovered during his investigation of the burglary of the Dollar General store on Middlebrook Pike because the burglars were wearing gloves. He also testified that nothing appearing in the photographs of that burglary identified the person who had accompanied Chris Kirkpatrick during that burglary.

Following this testimony, the State rested. The [petitioner] took the stand in his own defense and testified that on January 19, 2009, he had a normal Sunday and watched presidential inaugural pre-celebrations on T.V. Around 7:00 p.m., Chris Kirkpatrick, Mr. Phelps, and Ms. Moore came over to his house and told him they were going to a poker game. The [petitioner] testified that after they left, he stayed at home and waited for another friend of his to come over to clean the carpets. He testified that Chris Kirkpatrick arrived back at his house shortly after midnight and went to sleep. The [petitioner] testified that at 8:15 a.m. the following morning Chris Kirkpatrick went over to Mr. Phelps' house. The [petitioner] testified that he did not burglarize a Dollar General store that evening and that no

6

one brought a safe over to his house and broke it open. He testified that "all was quiet" at his house that night.

The [petitioner] testified that on January 29, 2009, Chris Kirkpatrick arrived at his house, followed shortly afterward by Mr. Phelps and Ms. Moore, who arrived between 9:00 p.m. and 10:00 p.m. The [petitioner] testified that Ms. Moore ask[ed] him to take Mr. Phelps and Chris Kirkpatrick to a poker game, and he agreed. He testified that he drove the two men to the town of Blaine to attend the poker game around 2:00 a.m. He testified that Mr. Phelps told him to drop them off at a yellow house with a yellow garage (and he identified this house on a map provided to him while he was on the stand). He testified that after he left he made a couple of wrong turns in his effort to leave the area. When he re-entered Knox County, he was pulled over and arrested at gunpoint. The [petitioner] testified that he was never told at any point that any burglary was going to take place at a Dollar General store.

The [petitioner] also testified that he had three prior felony convictions plus an escape attempt on his record. He testified that he had not been convicted of a crime since 1994.

On cross-examination, the [petitioner] acknowledged that he lived with his brother, who had pled guilty to the burglary at issue and to the attempted burglary of the Dollar General store in Grainger County. The [petitioner] testified that Mr. Phelp[s'] testimony was not true and emphasized that no stolen safe was ever brought into his house. The [petitioner] testified that when he dropped off his brother to play poker on the night of January 29, 2009, his brother did not have a big bag full of tools; instead, he only had a small bag containing poker chips and three packs of cards.

State v. Jerry Kirkpatrick, No. E2011-01091-CCA-R3-CD, 2013 WL 105896, at *2-6 (Tenn. Crim. App. Jan. 9, 2013), perm. app. denied (Tenn. June 12, 2013).

On November 6, 2013, the petitioner filed a *pro se* petition for post-conviction relief and, after the appointment of counsel, two amended petitions were filed. In his petitions, the petitioner raised various allegations of ineffective assistance of counsel. On appeal, the petitioner argues that counsel rendered ineffective assistance by failing to present the testimony of Chris Kirkpatrick, his brother and alleged co-perpetrator, who would have testified that the petitioner was not involved in the burglary in the case at

issue. Therefore, we will limit our recitation of the testimony at the evidentiary hearing to that relevant to this issue.

At the hearing, Chris Kirkpatrick, the petitioner's brother, testified that he pled guilty to the burglary of the Dollar General store on Middlebrook Pike in Knox County, as well as the attempted burglary of the Dollar General store in Grainger County. He said that Daniel Phelps was his co-defendant in those crimes and that they were both guilty. The petitioner was also charged in both cases. Mr. Kirkpatrick recalled that the petitioner's attorney visited him when he was incarcerated to discuss the petitioner's Knox County case. He claimed that, during that visit, he told counsel of his and Mr. Phelps's involvement in both crimes and that the petitioner was not involved in either burglary. He also claimed that he told counsel he would testify to that effect in the petitioner's trial. However, he was never brought in to testify. After he was released on parole, he went to court and testified at the petitioner's trial in the Grainger County case, and the petitioner was not convicted. Mr. Kirkpatrick denied splitting any proceeds from the burglary with the petitioner.

The petitioner testified that he was not involved in the burglary of the Dollar General in Knox County at issue in this case or the Dollar General in Grainger County. He was represented by counsel in the Knox County case and by another attorney at his subsequent trial in the Grainger County case in which he was not convicted. With regard to the case at hand, the petitioner stated that he met with counsel "numerous times" to discuss the case. However, he received "very little" discovery from counsel. Nonetheless, he was aware that Danny Phelps and Phelps's girlfriend, Heather Moore, were going to testify for the State at his trial. Although he and counsel discussed the Grainger County incident, the petitioner was not aware of the State's intent to present evidence concerning his alleged involvement in that case until the day of trial. The petitioner insisted that he told counsel that he was not involved in either burglary. He gave counsel the names of individuals who may have been involved in the burglary, particularly, Chris Kirkpatrick who would have "first-hand knowledge" of the incident. The petitioner said that he made the same suggestion to his attorney in the Grainger County case, that he speak with Chris Kirkpatrick, and Mr. Kirkpatrick was called as a witness in that case and testified that the petitioner was not involved. The petitioner was not convicted in the Grainger County case. The petitioner said that he expected that Chris Kirkpatrick would be a witness at his trial in the Knox County case because he was on the State's subpoena list.

The petitioner's trial counsel testified that the petitioner told him that Chris Kirkpatrick was a potential witness, and counsel made arrangements to meet Mr. Kirkpatrick in the penitentiary where he was housed. Counsel traveled 582 miles round trip to meet Mr. Kirkpatrick on March 15, 2011. Counsel recalled that he introduced

himself to Mr. Kirkpatrick, and Mr. Kirkpatrick "said he would not talk to [him] about this case." That was the end of their conversation. Counsel met with the petitioner on March 30, 2011, and "told him that his brother would not talk to me." Counsel said that it was his practice to not present a witness at trial if he did not know what the witness would say. Therefore, he did not subpoena Mr. Kirkpatrick as a witness for trial. He believed that it would have been ineffective assistance for him to have placed Mr. Kirkpatrick on the stand in light of his unwillingness to speak with counsel beforehand.

Counsel recalled that he filed a motion in limine to exclude evidence of the Grainger County attempted burglary from the petitioner's trial, but the motion was denied. With regard to discovery, counsel said that he gave the petitioner "a copy of every page that [he] had."

Following the hearing, the post-conviction court entered a written order denying relief. The court found that the testimony of the State's witness was "infinitely more credible" than that of the defense witness. The court determined that counsel went to great lengths to interview the requested witness, and the witness refused to speak with him about the case. The court noted that it would have been deficient performance for counsel to put a witness on the stand to testify when he did not know what the witness would say. The court further noted that "[s]ince the [p]etitioner has not established deficient performance, there is no need to consider the prejudice prong."

## ANALYSIS

On appeal, the petitioner argues that counsel rendered ineffective assistance by failing to present the testimony of Chris Kirkpatrick, who would have testified that the petitioner was not involved in the burglary of the Dollar General store in Knox County at issue in this case.

The post-conviction petitioner bears the burden of proving his factual allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's

findings of fact.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding.  Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation.  See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).  The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

10

At the evidentiary hearing, counsel testified that the petitioner told him that Chris Kirkpatrick was a potential witness. Counsel made arrangements to meet Mr. Kirkpatrick in the penitentiary where he was housed and traveled 582 miles round-trip to do so. Counsel introduced himself to Mr. Kirkpatrick, and Mr. Kirkpatrick refused to talk to counsel about the petitioner's case. In light of Mr. Kirkpatrick's refusal, counsel decided not to call him as a witness, explaining that it could have been perilous to the petitioner to call a witness if he did not know how that witness would testify. On the contrary, Mr. Kirkpatrick testified that he met with counsel and told counsel that the petitioner was not involved in either burglary. He also claimed that he told counsel that he would testify to that effect in the petitioner's trial. The post-conviction court specifically found that counsel's testimony was "infinitely more credible" than Mr. Kirkpatrick's testimony. Like the post-conviction court, we discern no deficiency in counsel's informed decision, made after diligent investigation, to refrain from calling Mr. Kirkpatrick to testify at the petitioner's Knox County trial. As such, we need not address whether the petitioner was prejudiced by any alleged deficiency.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE